1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10  PHILIP MORRIS, JR.

11            Plaintiff,                    No. CIV S-00-2794 GEB GGH P

12       vs.

13  ANTHONY NEWLAND, et al.,

14            Defendants.          FINDINGS AND RECOMMENDATIONS

15  _____/

16  Introduction

17            Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S.C. §

18  1983.  Pending before the court are defendants' motion to dismiss, filed on April 25, 2006, and

19  an amended motion to dismiss, filed on April 26, 2006; plaintiff has filed an opposition to the

20  amended motion.  The court finds that the amended motion supersedes the earlier motion and

21  strikes the earlier filed motion.

22  Fourth Amended Complaint

23            This action proceeds on plaintiff's fourth amended complaint (AC), filed on

24  September 8, 2005.[1]  Plaintiff names as defendants former California State Prison- Solano (CSP-

25  _____

26       [1] Plaintiff's original complaint was filed on December 6, 2000; plaintiff filed a first
    amended complaint on May 29, 2001, pursuant to the court's order, filed on May 1, 2001.  Upon

1

1   Sol) Warden Anthony Newland; former Director Steve Cambra, of the formerly named

2   California Department of Corrections (CDC), now California Department of Corrections and

3   Rehabilitation (CDCR); and three CSP-Sol correctional officers: (C/O) J.R. Weaver; C/O

4   Fletcher; C/O Paul.  Plaintiff states that he is incarcerated at California State Prison-Lancaster

5   (CSP-Lan) in Los Angeles, but his latest filings demonstrate that he is now incarcerated at

6   California Men's Colony.

7                   Plaintiff alleges that defendant Weaver, from September 18, 1998 through March,

8   2000, repeatedly placed plaintiff in a life-threatening situation at CSP-Sol by telling staff and

9   inmates that plaintiff is a homosexual, child molester and rapist.  AC, p. 3.  Plaintiff further

10  alleges that defendant Weaver provided information to CSP-Sol Muslim inmates about plaintiff's

11  alleged misconduct which gave rise to CDC-115 Rule Violation Reports, making it difficult for

12  plaintiff to worship and have a fellowship with Muslim inmates, as well as making it difficult for

13  plaintiff to interact with general population inmates and potential cell partners.  Id.  Moreover,

14  plaintiff alleges that defendant Weaver shared with other staff the private and privileged

15  information about his commitment offense, evidently a conviction for second degree murder.  Id.

16  Plaintiff claims that defendant Weaver placed false documents in his file, although he does not

17  identify such alleged documents.  Plaintiff revisits a claim that has been previously found, inter

18  alia, Heck-barred.[2]  AC, p. 4.  Plaintiff alleges that defendant Weaver has falsely labeled him as a

19  sexual predator in retaliation for plaintiff having filed inmate grievances, as well as a grand jury

20

21  defendants' motion to dismiss, plaintiff was granted leave to file a second amended complaint,
    which was stricken for plaintiff's failure to comply with court orders, filed on May 13, 2003, July
22  24, 2003, and September 9, 2003.  See, Order, filed on September 29, 2003.  Plaintiff's third
    amended complaint was ultimately stricken, primarily for plaintiff's failure to comply with Fed.
23  R. Civ. P. Rule 8, with leave granted for plaintiff to file a fourth amended complaint even though
    plaintiff had been cautioned before filing the third amended complaint that he would have only
24  one further opportunity to file an amended complaint in compliance with prior court orders.
    See, Orders, filed on September 29, 2003, and on July 7, 2005.  Defendants were directed to file
25  a response to the fourth amended complaint.  See, Order, filed on March 23, 2006.

26          [2]  Heck v. Humphrey, 512 U.S. 477, 114 S. Ct. 2364 (1994).

1    complaint, against her for the purpose of having staff and inmates threaten his life or injure him.

2    AC, pp. 4, 7.

3           Plaintiff alleges that defendant Warden Newland violated plaintiff's right to

4    privacy and to due process by allowing plaintiff to be, or at risk for being, viewed completely or

5    partly nude by any female guard in the course of her duties.  AC, p. 5.  He also alleges that male

6    inmates are exposed to observation by female guards in the use of cell toilet facilities and in

7    various states of dress and undress in their cells.  Id.  Plaintiff further alleges that he is denied the

8    right to the free exercise of his religion by this exposure because the Holy Qu'ran requires male

9    Muslims not to reveal their private parts to any but a wife or certain close relative(s).  AC, p. 6.

10   Plaintiff does not reference the Religious Land Use and Institutionalized Persons Act of 2000

11   (RLUIPA) as the basis for his claim within the body of his complaint although he has been given

12   ample opportunity to do so.  Plaintiff has, however, referenced RLUIPA in the caption of his

13   filing, so the court will liberally construe his claims with regard to female guards to be made

14   under RLUIPA.[3]  Defendants Weaver, Fletcher and Paul, in retaliation for plaintiff's having filed

15   grievances about female guards being able to watch him in the shower, have made sure to

16   observe plaintiff at length in the shower and in his cell, violating his First Amendment rights, his

17   right to privacy and his right to practice his faith as a Sunni Muslim.  AC, p. 8.

18          Defendants Newland and Cambra failed to correct the violations of his

19   constitutional rights when he filed grievances about them.  Plaintiff claims that defendants

20   Newland and Cambra "created a policy or custom allowing and encouraging the illegal act of

21   placing plaintiff in administrative segregation housing, violating plaintiff's right to privacy,

22   violating plaintiff's Islamic beliefs."  AC, p. 6.

23

24          [3] Plaintiff's claims with regard to violations of his First Amendment right to the free
     exercise of religion by defendants Newland and Cambra were dismissed long ago, so that
25   plaintiff might more properly attempt to frame a RLUIPA claim.  See Order and Findings and
     Recommendations, filed on May 13, 2003, p. 17.   The Findings and Recommendations, were
26   adopted by Order, filed on July 24, 2003.

3

1    Plaintiff vaguely references claims regarding CSP-Solano's toilet break policies

2  when inmates are in the dayroom, but he does not link them to any named individual and again

3  appears to be seeking to frame a claim regarding a Rules Violation Report re: indecent exposure,

4  which the court has found to be <u>Heck</u>-barred, or which must properly be first challenged and

5  invalidated in the context of a habeas petition.  AC, p. 7.  Plaintiff seeks money damages and

6  injunctive relief.

7  <u>Motion to Dismiss</u>

8    Defendants move for dismissal, pursuant to Fed. R. Civ. P. 12(b)(6), on the

9  ground that plaintiff has failed to state a claim upon which relief can be granted and on the

10 ground that defendants are entitled to qualified immunity on his damages claim; defendants also

11 contend that plaintiff's claims for injunctive relief are moot.  Amended Motion to Dismiss, p. 1

12 (MTD).

13    *Legal Standard for Motion to Dismiss*

14    A complaint should not be dismissed under Rule 12(b)(6) unless it appears

15 beyond doubt that plaintiff cannot prove any set of facts consistent with his allegations which

16 would entitle him to relief.  <u>NOW, Inc. v. Schiedler</u>, 510 U.S. 249, 256, 114 S. Ct. 798, 803

17 (1994); <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73, 104 S. Ct. 2229, 2232 (1984), citing <u>Conley</u>

18 <u>v. Gibson</u>, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957),  <u>Cervantes v. City of San Diego</u>, 5 F.3d

19 1273, 1274-75 (9th Cir. 1993).  Dismissal of the complaint, or any claim within it, "can be based

20 on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a

21 cognizable legal theory."  <u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696, 699 (9th Cir. 1990);

22 <u>see also</u> <u>Robertson v. Dean Witter Reynolds, Inc.</u>, 749 F.2d 530, 534 (9th Cir. 1984).

23    In considering a motion to dismiss, the court must accept as true the allegations of

24 the complaint in question, <u>Hospital Bldg. Co. v. Rex Hospital Trustees</u>, 425 U.S. 738, 740, 96 S.

25 Ct. 1848, 1850 (1976), construe the pleading in the light most favorable to the party opposing the

26 motion and resolve all doubts in the pleader's favor.  <u>Jenkins v. McKeithen</u>, 395 U.S. 411, 421,

4

89 S. Ct. 1843, 1849, reh'g denied, 396 U.S. 869 (1969). The court will "'presume that general allegations embrace those specific facts that are necessary to support the claim.'" NOW, 510 U.S. at 256; 114 S. Ct. at 803, quoting Lujan v. Defenders of Wildlife, 504 U.S.555, 561, 112 S. Ct. 2130, 2137 (1992). Moreover, pro se pleadings are held to a less stringent standard than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 596 (1972). A motion to dismiss for failure to state a claim should not be granted unless it appears beyond doubt that plaintiff can prove no set of facts in support of the claim that would entitle him to relief. See Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S. Ct. 2229, 2232 (1984), citing Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957); see also Palmer v. Roosevelt Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981).

The court may consider facts established by exhibits attached to the complaint. Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987). The court may disregard allegations in the complaint if they are contradicted by facts established by exhibits attached to the complaint. Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987). Furthermore, the court is not required to accept as true allegations that contradict facts which may be judicially noticed. Mullis v. United States Bankruptcy Ct., 828 F.2d 1385, 1388 (9th Cir. 1987), cert. denied, 486 U.S. 1040 (1988). The court need not accept as true conclusory allegations, unreasonable inferences, or unwarranted deductions of fact. Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir.), cert. denied, 454 U.S. 1031 (1981). The court need not accept legal conclusions "cast in the form of factual allegations." Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir.), cert. denied, 454 U.S. 1031 (1981).

A pro se litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies could not be cured by amendment. See Noll v. Carlson, 809 F. 2d 1446, 1448 (9th Cir. 1987).

\\\\\

\\\\\

1    *Discussion*

2         Privacy

3         Defendants contend that plaintiff does not have a Fourth Amendment right to

4    privacy with regard to his claims against defendants Fletcher, Weaver and Paul, for their viewing

5    of him in the shower and in his housing unit in various states of undress.  MTD, p. 6.  In

6    Grummett v. Rushen, 779 F.2d 491, 495 (9th Cir. 1985), the Ninth Circuit found that the female

7    guards' observations of unclothed body searches of male prisoners in emergency situations or in

8    restricted circumstances did not constitute an unconstitutional invasion of privacy.  Nor did the

9    surveillance of inmates in their cells and showers constitute an unreasonable search in violation

10   of the Fourth Amendment, even if the potential for viewing unclothed inmates was great, since

11   the record indicated the actual viewing to be "infrequent and irregular."  Id.  As defendants

12   contend (MTD, p. 6), the Ninth Circuit stated: "To restrict the female guards from positions

13   which involve occasion viewing of the inmates would necessitate a tremendous rearrangement of

14   work schedules, and possibly produce a risk to both internal security needs and equal

15   employment opportunities for the female guards."  Grummett, supra, at 496.  In Grummett, the

16   court found that the prison policy of allowing female correctional officers to view male inmates

17   in partial or total nudity while showering, dressing, being strip-searched or using toilet facilities

18   did not violate the prisoners' privacy rights under the Fourth or Fourteenth Amendments.

19        In Michenfelder v. Sumner, 860 F.2d 328, 334 n. 3 (9th Cir. 1988), the Ninth

20   Circuit recognized that Grummett had used a least intrusive means test subsequently rejected by

21   Turner v. Safley, 482 U.S. 78, 89, 107 S. Ct. 2254, 2261 (1987),[4] and framed the issue as whether

22

23        [4] The four factor Turner test is utilized to determine if a prison regulation violated a
     prisoner's constitutional rights. "First, there must be a valid, rational connection between the
     prison regulation and the legitimate governmental interest put forward to justify it, and the
24   governmental objective itself must be a legitimate and neutral one.  A second consideration is
     whether alternative means of exercising the right on which the regulation impinges remains open
25   to prison inmates.  A third consideration is the impact accommodation of the asserted right will
     have on guards, other inmates, and the allocation of prison resources.  Finally, the absence of
26   ready alternatives is evidence of the reasonableness of a prison regulation." Allen v. Toombs,

1   or not female officers observed unclothed male inmates "regularly or frequently ... without a

2   legitimate reason for doing so."  Finding that, inter alia, the female officers' role in shower duty

3   in that case did not establish an inordinate or inappropriate amount of contact with unclothed

4   prisoners, the appellate court noted the "special relevance" of the third <u>Turner</u> factor, determining

5   that requiring female officers "to be replaced by males for the duration of strip searches would []

6   displace officers throughout the prison." <u>Michenfelder</u>, <u>supra</u>, at 334.  The prison's allocation of

7   duties among the male and female employees was found to represent "a reasonable attempt to

8   accommodate prisoners' privacy concerns consistent with internal security needs and equal

9   employment concerns." <u>Id</u>.

10           In <u>Somers v. Thurman</u>, 109 F.3d 614, 619-620 (9th Cir. 1997), the Ninth Circuit

11   made the following observation re: <u>Grummett</u>, <u>supra</u>, and <u>Michenfelder</u>, <u>supra</u>:

12           [B]oth times this circuit has addressed the question, it has
                 *permitted* prison officials to view unclothed inmates of the
13           opposite sex.  We have engaged in a balancing of inmates' interest
                 in not being viewed unclothed with the administrative needs of the
14           prison.  Thus, we have permitted female guards to view unclothed
                 male prisoners, where "the positions to which they are assigned
15           require infrequent and casual observation, or observation at a
                 distance." <u>Grummett v. Rushen</u>, 779 F.2d 491, 494 (9th Cir.
16           1985).  We have also held that the Constitution does not bar female
                 guards from occasionally being present at strip searches of men or
17           from routinely serving on shower duty in a men's prison.
                 <u>Michenfelder v. Sumner</u>, 860 F.2d 328, 330, 334 (9th Cir. 1988).
18           In sum, this circuit has never held that the Constitution is violated
                 by the mere fact of a prison official viewing the unclothed body of
19           an inmate of the opposite sex....

20   [Emphasis in original].

21           Although, as defendants concede, the Ninth Circuit has found that "up close,

22   frequent, and intentional viewings by guards of the opposite sex could violate a prisoner's

23   privacy rights," MTD, p. 6., quoting <u>Somers</u>, <u>supra</u>, at 620, the court noted that it is unclear from

24   dicta in <u>Hudson v. Palmer</u>, 468 U.S. 517, 527-528, 104 S. Ct. 3194,  3200, 3201 (1984), whether

25   _____

26   827 F.2d 563, 567 (9th Cir. 1987) (citing <u>Turner</u>, 482 U.S. at 89-91); <u>see also</u>, <u>Malik v. Brown
     III</u>, 71 F.3d at 728-729.

                                                    7

prisoners retain any rights under the Fourth Amendment to privacy against body searches,[5] or

whether their only safeguard as to egregious body searches lies in the Eighth Amendment.

Somers, supra, at 619.  In finding that the plaintiff in Somers had failed to allege a Fourth

Amendment claim, the court also determined he had not made an Eighth Amendment claim, even

where the female officials had engaged in "gawking" at the plaintiff and had pointed at him in

the shower "and joked 'among themselves.'"  Somers, supra, at 622.  Plaintiff in that case had

not alleged an intention thereby to humiliate him.  Id.  Moreover, such conduct did not rise to the

requisite level of egregiousness to constitute an Eighth Amendment violation.

　　　　　　　　To constitute an Eighth Amendment violation, the conduct must consist of both a

subjective and objective component: a prisoner must allege conduct that 1) demonstrates a

sufficiently culpable state of mind on the part of prison officials and 2) is objectively

significantly harmful.  Hudson v. McMillian, 503 U.S. 1, 8, 112 S. Ct. 995, 999-1000 (1992).

Cases involving Eighth Amendment violations, as the Somers Court detailed, implicate

circumstances more severe than those set forth either in that case or here with respect to

plaintiff's cross-gender viewing claims:

> In McMillian, for example, prison guards punched an inmate in the
> mouth, eyes, chest, and stomach while another officer held the
> inmate in place and kicked and punched him from behind.
> McMillian, 503 U.S. at 4, 112 S.Ct. at 997-98.  The prisoner
> suffered swelling of the face, mouth, and lip, and the blows
> loosened his teeth and cracked his dental plate.  Id. This egregious
> conduct was sufficient to state an Eighth Amendment claim.  See
> also McCord v. Maggio, 927 F.2d 844, 848 (5th Cir.1991) (Eighth
> Amendment violation when a prisoner was forced to live and sleep
> for two years in an unlit cell with backed up sewage and roaches);
> Fruit v. Norris, 905 F.2d 1147, 1150 (8th Cir.1990) (Eighth
> Amendment violation when prison officials compelled inmates to
> work inside the prison's sewage lift-pump station without

---

[5]  That inmates do not have any Fourth Amendment claim with respect to cell searches is,
on the other, hand well-established.  Hudson v. Palmer, 468 U.S. 517, 525-526, 104 S, Ct. 3194,
3200 (1984) ("we hold that society is not prepared to recognize as legitimate any subjective
expectation of privacy that a prisoner might have in his prison cell and that, accordingly, the
Fourth Amendment proscription against unreasonable searches does not apply within the
confines of the prison cell."

1

protective clothing and equipment); Parrish v. Johnson, 800 F.2d
600, 605 (6th Cir.1986) (Eighth Amendment violation when prison
guard assaulted paraplegic inmate with a knife and forced him to
sit in his own feces); Vaughan v. Ricketts, 859 F.2d 736, 741 (9th
Cir.1988) (prison officials not entitled to qualified immunity
regarding inmate's Eighth Amendment claim where untrained
medical assistants performed digital rectal cavity searches on
unsanitary table in view of other prison personnel); Cooper v.
Sheriff of Lubbock County, 929 F.2d 1078, 1083 (5th Cir.1991)
(forfeiture of adequate food for significant periods of time is a
"form of corporal punishment" forbidden by the Eighth
Amendment); French v. Owens, 777 F.2d 1250, 1255 (7th
Cir.1985) (concluding kitchen and food storage areas unsanitary
and unconstitutional); Hoptowit v. Spellman, 753 F.2d 779, 784
(9th Cir.1985) (inadequate "ventilation and airflow" violates
Eighth Amendment if it "undermines the health of inmates and the
sanitation of the penitentiary"); Spain v. Procunier, 600 F.2d 189,
199 (9th Cir.1979) (Eighth Amendment is violated where prison
officials completely deny exercise to some prisoners and limit the
remaining population to less than five hours indoor exercise per
week). "Because routine discomfort is part of the penalty that
criminal offenders pay for their offenses against society, only those
deprivations denying the minimal civilized measure of life's
necessities are sufficiently grave to form the basis of an Eighth
Amendment violation." McMillian, 503 U.S. at 9, 112 S.Ct. at
1000 (internal quotations and citations omitted).

Somers, supra, at 623.

With respect, therefore, to whether plaintiff has adequately framed a claim of a violation of his

privacy or a violation under the Eighth Amendment violation against defendants Fletcher,

Weaver and Paul, for their intentional observation of him in the shower and in his housing unit in

various states of undress.  Nor has plaintiff alleged a constitutional violation against these

defendants on these facts on grounds of the Fourth Amendment.  Defendants' motion to dismiss

on these grounds should be granted.

Nor does the court find that any purpose would be served in this case by granting

further leave to amend.  This is plaintiff's fourth amended complaint; plaintiff has been

generously permitted to amend his claims multiple times.  Liberality in granting a plaintiff leave

to amend "is subject to the qualification that the amendment not cause undue prejudice to the

defendant, is not sought in bad faith, and is not futile."  Thornton v. McClatchy Newspapers,

9

1   Inc., 261 F.3d 789, 799 (9th Cir. 2001), quoting Bowles v. Reade, 198 F.3d 752, 757 (9th

2   Cir.1999).   In this case, the court can discern no manner in which plaintiff might be able to cure

3   the defects of these allegations against defendants, rendering this a relatively rare case, when to

4   grant plaintiff further leave to amend would be patently futile.

5              Retaliation

6              On the other hand, plaintiff's allegations with respect to defendants Weaver,

7   Fletcher and Paul are, while not particularly well-pleaded, adequate to survive a motion to

8   dismiss with respect to their having, in essence, repeatedly ogled him in retaliation for his having

9   filed inmate grievances regarding female guards being allowed to watch him showering or

10  otherwise undressed.

11             Inmates have a right to be free from the filing of false disciplinary charges in

12  retaliation for the exercise of constitutionally protected rights.  Pratt v. Rowland, 65 F.3d 802,

13  807 (9th Cir. 1995); Schroeder v. McDonald, 55 F.3d 454, 461 (9th Cir. 1995); Rizzo v. Dawson,

14  778 F.2d 527, 532 (9th Cir. 1985).  The Ninth Circuit treats the right to file a prison grievance as

15  a constitutionally protected First Amendment right.  Hines v. Gomez, 108 F.3d 265 (9th Cir.

16  1997); see also Hines v. Gomez, 853 F. Supp. 329 (N.D. Cal. 1994) (finding that the right to

17  utilize a prison grievance procedure is a constitutionally protected right, cited with approval in

18  Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995)); Graham v. Henderson, 89 F.3d 75 (2nd Cir.

19  1996) (retaliation for pursing a grievance violates the right to petition government for redress of

20  grievances as guaranteed by the First and Fourteenth Amendments); Jones v. Coughlin, 45 F.3d

21  677, 679-80 (2nd Cir. 1995) (right not to be subjected to false misconduct charges as retaliation

22  for filing prison grievance); Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989) (filing

23  disciplinary actionable if done in retaliation for filing inmate grievances); Franco v. Kelly, 854

24  F.2d 584, 589 (2nd Cir. 1988) ("Intentional obstruction of a prisoner's right to seek redress of

25  grievances is precisely the sort of oppression that section 1983 is intended to remedy" (alterations

26  and citation omitted)); Cale v. Johnson, 861 F.2d 943 (6th Cir. 1988) (false disciplinary filed in

1  retaliation for complaint about food actionable).

2      In order to state a retaliation claim, a plaintiff must plead facts which suggest that

3  retaliation for the exercise of protected conduct was the "substantial" or "motivating" factor

4  behind the defendant's conduct.  See Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th

5  Cir. 1989).  The plaintiff must also plead facts which suggest an absence of legitimate

6  correctional goals for the conduct he contends was retaliatory.  Pratt at 806 (citing Rizzo at 532).

7  Verbal harassment alone is insufficient to state a claim.  See Oltarzewski v. Ruggiero, 830 F.2d

8  136, 139 (9th Cir. 1987).  However, even threats of bodily injury are insufficient to state a claim,

9  because a mere naked threat is not the equivalent of doing the act itself.  See Gaut v. Sunn, 810

10  F.2d 923, 925 (9th Cir. 1987).  Mere conclusions of hypothetical retaliation will not suffice, a

11  prisoner must "allege specific facts showing retaliation because of the exercise of the prisoner's

12  constitutional rights."  Frazier v. Dubois, 922 F.2d 560, 562 (n. 1) (10th Cir. 1990).

13      In this case, while plaintiff has not framed colorable allegations with respect to

14  any false disciplinary charges brought by any defendant because such claims have been

15  previously found to be Heck-barred, and to the extent that plaintiff sought injunctive relief

16  regarding such charges, he has been informed that he must proceed by way of a habeas petition.

17  See Preiser v. Rodriguez, 411 U.S. 475, 500, 93 S. Ct. 1827 (1973).  On the other hand, if

18  defendants Weaver, Fletcher and Paul deliberately subjected plaintiff to extended periods of their

19  observation as he showered, etc., simply because he had objected to being observed by female

20  correctional officers in the inmate grievance process, he has framed a colorable claim of

21  retaliation.  Nor do defendants make any claim of qualified immunity to their conduct in the

22  context of a retaliation claim.  Defendants have failed to adequately address this claim and

23  plaintiff's claim for retaliation by defendants Weaver, Fletcher and Paul for their having

24  allegedly deliberately and for extended periods observed plaintiff while he was showering or

25  while he was undressed in his cell because he filed inmate grievances related to female guards'

26  observation of nude or undressed male prisoners should proceed.

1    As to defendant Weaver's[6] having spread false allegations among staff and other

2    inmates that plaintiff was a child molester, homosexual and/or rapist for the purpose of setting

3    plaintiff up for injury or worse, as well as revealing sensitive information about plaintiff's

4    commitment offense, the court finds that plaintiff's claims are more colorable as a claim of

5    retaliation for his having filed grievances against her, than as an Eighth Amendment violation.  It

6    is certainly true that "'prison officials have a duty...to protect prisoners from violence at the

7    hands of other prisoners.'" Farmer v. Brennan, 511 U.S. 825, 833, 114 S. Ct. 1970, 1976 (1994),

8    and plaintiff's claims demonstrate that defendant Weaver by her conduct as set forth arguably

9    met both the "objectively, 'sufficiently serious'" prong, id. at 834, 114 S. Ct. at 1977, as well as

10   the subjective "deliberate indifference" to an excessive risk of harm requirement.  Id.  In fact, the

11   conduct as alleged goes beyond any form of indifference to an actual intent to inflict injury.

12   However, plaintiff does not, as defendants note, allege that he suffered any physical harm or that

13   he was ever threatened by other inmates as a result of such actions.  MTD, pp. 8-9.  The only

14   injury claimed is that her conduct somehow made his fellowship with fellow Muslims difficult

15   and made his interactions with the general population and potential cellmates "unsafe" and

16   difficult.  AC, p. 3.  The vagueness of the description of the impact of her conduct does not rise

17   to an Eighth Amendment violation.  Defendants' motion to dismiss plaintiff's allegations of an

18   Eighth Amendment violation for defendant Weaver's alleged actions should be granted without

19   leave to amend.

20   Defendants make no specific claim for qualified immunity for the retaliation

21   allegations, nor would such an argument be availing with respect to plaintiff's claim that

22   defendant Weaver spread false allegations over a two-year period that plaintiff was a sexual

23   predator, rapist, child molester and/or homosexual and revealed sensitive information to others

24

25   [6] For some reason, defendants ascribe these allegations to defendant Fletcher rather than
     defendant Weaver.  MTD, pp. 7-9.  The court construes mis-identification as inadvertent and
     construes defendants' argument as intended on behalf of defendant Weaver against whom
26   plaintiff made these allegations in his fourth amended complaint.

1  about his commitment offense for his having filed grievances against her.  Plaintiff's claim

2  against defendant Weaver on these allegations should proceed as a separate claim of retaliation

3  from the allegations concerning plaintiff's being observed unclothed.

4                                        Conspiracy

5                    Although plaintiff has framed claims of retaliation against defendants Weaver,

6  Fletcher and Paul, for the filing of inmate grievances, he has not thereby adequately alleged a

7  conspiracy among the defendants.  Plaintiff does not plead facts with enough specificity to show

8  the requisite agreement or a meeting of the minds on the part of defendants to violate his

9  constitutional rights.  Woodrum v. Woodward County, 866 F.2d 1121, 1126 (9th Cir. 1989),

10  citing Fonda v. Gray, 707 F.2d 435 (9th Cir. 1983).  Conspiracy allegations must be supported by

11  material facts and not be merely conclusory statements.  Lockary v. Kayfetz, 587 F. Supp. 631

12  (N. D. Cal. 1984).  Defendants motion to dismiss plaintiff's claims of conspiracy, to the extent

13  that he made such claims, should be granted without leave to amend.

14                          Due Process and Vicarious Liability

15                    Defendants frame plaintiff's claims against Newland and Cambra as made only in

16  the context of their having denied plaintiff's grievances with regard to being observed undressed

17  by female officers or in their supervisorial capacity.  To the extent that plaintiff intends due

18  process claims against Newland and Cambra for denying his appeals, defendants are correct.

19  Prisoners do not have a "separate constitutional entitlement to a specific prison grievance

20  procedure."  Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003), citing Mann v. Adams, 855

21  F.2d 639, 640 (9th Cir. 1988).  Even the non-existence of, or the failure of prison officials to

22  properly implement, an administrative appeals process within the prison system does not raise

23  constitutional concerns.  Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988).  See also, Buckley

24  v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993); Flick v. Alba, 932 F.2d 728 (8th Cir. 1991).  Azeez

25  v. DeRobertis, 568 F. Supp. 8, 10 (N.D.Ill. 1982) ("[A prison] grievance procedure is a

26  procedural right only, it does not confer any substantive right upon the inmates.  Hence, it does

not give rise to a protected liberty interest requiring the procedural protections envisioned by the

fourteenth amendment").  Specifically, a failure to process a grievance does not state a

constitutional violation.  <u>Buckley</u>, <u>supra</u>.  State regulations give rise to a liberty interest protected

by the Due Process Clause of the federal constitution only if those regulations pertain to

"freedom from restraint" that "imposes atypical and significant hardship on the inmate in relation

to the ordinary incidents of prison life."  <u>Sandin v. Conner</u>, 515 U.S. 472, 484, 115 S. Ct. 2293,

2300 (1995).[7]  Defendants' motion to dismiss as to any due process claims against these

defendants Cambra and Newland should be granted without further leave to amend.

As to his claims on the ground of their supervisorial responsibilities, the Civil

Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes
> to be subjected, any citizen of the United States . . . to the
> deprivation of any rights, privileges, or immunities secured by the
> Constitution . . . shall be liable to the party injured in an action at
> law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the

actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  <u>See</u>

<u>Monell v. Department of Social Servs.</u>, 436 U.S. 658 (1978); <u>Rizzo v. Goode</u>, 423 U.S. 362

(1976).  "A person 'subjects' another to the deprivation of a constitutional right, within the

meaning of  § 1983, if he does an affirmative act, participates in another's affirmative acts or

omits to perform an act which he is legally required to do that causes the deprivation of which

complaint is made."  <u>Johnson v. Duffy</u>, 588 F.2d 740, 743 (9th Cir. 1978).

---

[7]  "[W]e recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. See also <u>Board of Pardons v. Allen</u>, 482 U.S. 369, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987). But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, see, e.g., <u>Vitek v. Jones</u>, 445 U.S. 480, 493, 100 S.Ct.1254, 1263-1264 (transfer to mental hospital), and <u>Washington</u>, 494 U.S. 210, 221- 222, 110 S.Ct. 1028, 1036-1037 (involuntary administration of psychotropic drugs), nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." <u>Sandin v. Conner</u>, <u>supra</u>.

1    Moreover, supervisory personnel are generally not liable under § 1983 for the

2 actions of their employees under a theory of <u>respondeat</u> <u>superior</u> and, therefore, when a named

3 defendant holds a supervisorial position, the causal link between him and the claimed

4 constitutional violation must be specifically alleged.  See <u>Fayle v. Stapley</u>, 607 F.2d 858, 862

5 (9th Cir. 1979); <u>Mosher v. Saalfeld</u>, 589 F.2d 438, 441 (9th Cir. 1978), <u>cert.</u> <u>denied</u>, 442 U.S.

6 941 (1979).  Vague and conclusory allegations concerning the involvement of official personnel

7 in civil rights violations are not sufficient.  See <u>Ivey v. Board of Regents</u>, 673 F.2d 266, 268 (9th

8 Cir. 1982).  To the extent that plaintiff seeks to implicate defendants Newland and Cambra on

9 the grounds of vicarious liability, defendants' motion should be granted without further leave to

10 amend.

11    <u>RLUIPA</u>

12    However, defendants do not frame any specific argument against plaintiff's

13 entitlement to relief under RLUIPA because defendants Newland and Cambra created a custom

14 or policy of depriving plaintiff of his right to practice his religion of Islam when female officers

15 were allowed to observe him unclothed, particularly in Ad Seg.  Plaintiff's claims under RLUIPA

16 also include claims against defendants Weaver, Paul and Fletcher for their unrestricted viewing

17 of him when he was nude.  As defendants do not address these claims, plaintiff's claims against

18 the defendants on these grounds should proceed.

19 <u>Injunctive Relief</u>

20    Plaintiff's injunctive relief claims with respect to the warden of CSP-Solano have

21 been previously dismissed in a prior incarnation of his complaint because plaintiff was no longer

22 housed at CSP-Solano.  See <u>Order</u> & <u>Findings and Recommendations</u>, filed on May 13, 2003, p.

23 18, and <u>Order</u>, adopting the <u>Findings and Recommendations</u>, filed on July 24, 2003.  That

24 circumstance has not changed.  In the prior order, the undersigned informed plaintiff that

25 injunctive relief claims made by an inmate concerning an institution at which he is no longer

26 incarcerated have been rendered moot.  See <u>Sample v. Borg</u>, 870 F.2d 563 (9th Cir. 1989);

1   Darring v. Kincheloe, 783 F.2d 874, 876 (9th Cir. 1986).  See also Reimers v. Oregon, 863 F.2d

2   630, 632 (9th Cir. 1988).  Further, it was found that plaintiff had not demonstrated any

3   reasonable possibility that he will be incarcerated at CSP-Solano at any predictable time in the

4   future, a finding which remains true in his current allegations.  Therefore, as to the prospective

5   injunctive relief claims against the defendant warden of CSP-Solano, defendants' motion to

6   dismiss should be granted.

7           As to, however, plaintiff's claims for prospective injunctive relief with regard to

8   the Director (Secretary) of CDCR,[8] just as it is not necessary to allege Monell[9] policy grounds

9   when suing a state or municipal official in his or her official capacity for injunctive relief related

10  to a procedure of a state entity, Chaloux v. Killeen, 886 F.2d 247 (9th Cir. 1989), it follows that

11  it is not necessary to allege the personal involvement of a state official when plaintiffs are

12  attacking a state procedure on federal grounds that relates in some way to the job duties of the

13  named defendant.  All that is required is that the complaint name an official who could

14  appropriately respond to a court order on injunctive relief should one ever be issued.  Harrington

15  v. Grayson, 764 F. Supp. 464, 475-477 (E.D.Mich. 1991); Malik v. Tanner, 697 F. Supp. 1294,

16  1304 (S.D.N.Y. 1988).  ("Furthermore, a claim for injunctive relief, as opposed to monetary

17  relief, may be made on a theory of respondeat superior in a § 1983 action."); Fox Valley

18  Reproductive Health Care v. Arft, 454 F. Supp. 784, 786 (E.D. Wis. 1978).  See also, Hoptowit

19  v. Spellman, 753 F.2d 779 (9th Cir. 1985), permitting an injunctive relief suit to continue against

20  an official's successors despite objection that the successors had not personally engaged in the

21  same practice that had led to the suit.  Although not well-pleaded, plaintiff apparently seeks to

22  allege a violation of his rights as a practicing Muslim under RLUIPA by the CDCR policy of

23

24          [8] Pursuant to Fed. R. Civ. P. 25(d), Warden T. Carey is substituted in this action in his official capacity with regard to plaintiff's claims for prospective injunctive relief, as is the Secretary of the CDCR, James Tilton, in his official capacity, for the former Director of the CDC.

25

26          [9] Monell v. Department of Social Servs., 436 U.S. 658, 98 S. Ct. 2018 (1978).

16

1  allowing female guards to view male inmates nude in showers as well as in various states of

2  undress in and near their cells in state prisons.  Certainly, the CDCR Secretary would be in a

3  position to effect the order of the court wherever plaintiff is incarcerated in the state, should one

4  be fashioned by the court.  Defendants' motion to dismiss plaintiff's claims for prospective

5  injunctive relief against defendant Tilton should be denied.

6           Accordingly, IT IS ORDERED that:

7           1. Defendants' April 25, 2006, motion is superseded by the amended motion to

8  dismiss, filed on April 26, 2006, and the April 25, 2006, motion to dismiss is therefore stricken;

9  and

10          2.  Pursuant to Fed. R. Civ. P. 25(d), defendant Tilton is substituted in, in his

11  official capacity only, for defendant Cambra solely for plaintiff's claims for prospective

12  injunctive relief related to a prison policy implicating RLUIPA.

13          IT IS HEREBY RECOMMENDED that defendants' amended motion to dismiss,

14  filed on April 26, 2006, be granted in part and denied in part as follows:

15          a) granted as to plaintiff's claims for a violation of his privacy rights under the

16  Fourth Amendment or any claims for violations of his rights under the Eighth Amendment for

17  defendants Weaver, Fletcher and Paul having observed him while he showered or while

18  undressed in his cell, and these claims be dismissed;

19          b) granted as to plaintiff's claims of a violation of his Eighth Amendment rights

20  against defendant Weaver for her having spread allegations as to his being a child molester,

21  rapist, or homosexual and for sharing sensitive information about his commitment offense among

22  staff and inmates;

23          c) granted as to any claims of conspiracy, and these claims be dismissed;

24          d) granted as to plaintiff's claims for prospective injunctive relief against

25  defendant Newland and these claims as to defendant Newland be dismissed;

26          e) granted as to any claims for money damages for the participation of defendants

17

1    Newland and Cambra in the grievance process or on claims regarding vicarious liability and

2    these claims be dismissed;

3              f) denied as to plaintiff's claims of retaliation in violation of his First Amendment

4    rights, against defendants Weaver, Fletcher and Paul for having unrestrictedly observed him in

5    various states of undress (in the shower and in his cell) and these claims proceed;

6              g) denied as to plaintiff's claims of retaliation against defendant Weaver for

7    having spread false allegations of child molesting, homosexuality and rape against plaintiff, as

8    well as sensitive information about his commitment offense for a two-year period to staff and

9    inmates;

10             h) denied as to plaintiff's claims for money damages under RLUIPA against

11   defendants Newland, Cambra, Weaver, Fletcher and Paul; and

12             i) denied as to plaintiff's claims for prospective injunctive relief against defendant

13   Tilton, substituted for defendant Cambra, to the extent plaintiff has framed claims against a state

14   prison policy allowing female guards to observe him, a male Muslim inmate, while he is nude in

15   the shower or undressed in his cell.

16             These findings and recommendations are submitted to the United States District

17   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

18   days after being served with these findings and recommendations, any party may file written

19   objections with the court and serve a copy on all parties.  Such a document should be captioned

20   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

21   shall be served and filed within ten days after service of the objections.  The parties are advised

22   that failure to file objections within the specified time may waive the right to appeal the District

23   Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

24   DATED: 3/6/07                                    /s/ Gregory G. Hollows

25                                                         GREGORY G. HOLLOWS
                                                          UNITED STATES MAGISTRATE JUDGE
26   GGH:009 - morr2794.mtd