IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

PHILIP MORRIS, JR.

      Plaintiff,                No. CIV S-00-2794 GEB GGH P

    vs.

ANTHONY NEWLAND, et al.,        ORDER &

      Defendants.         FINDINGS AND RECOMMENDATIONS

_____/

Introduction/Background

        Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S.C. § 1983.  Pending before the court are: 1) defendants' motion for summary judgment, filed on 9/21/07, to which plaintiff filed an opposition; 2) plaintiff's (defective) cross-motion for summary judgment, filed on 10/29/07, which will be vacated[1]; and 3) plaintiff's belated request for a continuance pursuant to Fed. R. Civ. P. 56(f), to which defendants filed their opposition and plaintiff filed a reply.

\\\\\

---

[1] As to plaintiff's putative cross-motion for summary judgment, which fails to comport with the Fed. R. Civ. P. 56, and which primarily and inappropriately challenges the procedures of a disciplinary finding, it is vacated as defective.

1        Plaintiff's original complaint was filed on 12/06/00; plaintiff filed a first amended

2  complaint on 5/29/01, pursuant to the court's order, filed on 5/01/01.  Upon defendants' motion

3  to dismiss, plaintiff was granted leave to file a second amended complaint, subsequently stricken

4  for plaintiff's failure to comply with court orders, filed on 5/13/03, 7/24/03, and 9/09/03.  See,

5  Order, filed on 9/29/03.  Plaintiff's third amended complaint was ultimately stricken, primarily

6  for plaintiff's failure to comply with Fed. R. Civ. P. Rule 8, with leave granted for plaintiff to file

7  a fourth amended complaint even though plaintiff had been cautioned before filing the third

8  amended complaint that he would have only one further opportunity to file an amended

9  complaint in compliance with prior court orders.  See, Orders, filed on 9/29/03, and 7/07/05.

10  Defendants' motion to dismiss the fourth amended complaint, resulted in dismissal of the

11  following claims: plaintiff's claims for a violation of his privacy rights under the Fourth

12  Amendment or any claims for violations of his rights under the Eighth Amendment for

13  defendants Weaver, Fletcher and Paul having observed him while he showered or while he was

14  undressed in his cell; plaintiff's claims of a violation of his Eighth Amendment rights against

15  defendant Weaver for her having spread allegations as to his being a child molester, rapist, or

16  homosexual and for sharing sensitive information about his commitment offense among staff and

17  inmates; and for plaintiff's claims of conspiracy.  Also dismissed were plaintiff's claims for

18  prospective injunctive relief against defendant Newland and for money damages for the

19  participation of defendants Newland and Cambra in the grievance process or on claims regarding

20  vicarious liability.  This matter now proceeds only on plaintiff's claims of retaliation in violation

21  of his First Amendment rights, against defendants Weaver, Fletcher and Paul for having

22  unrestrictedly observed him in various states of undress (in the shower and in his cell) and as to

23  plaintiff's claims of retaliation against defendant Weaver for having spread false allegations of

24  child molesting, homosexuality and rape against plaintiff, as well as sensitive information about

25  his commitment offense for a two-year period to staff and inmates.  In addition, plaintiff's claims

26  for money damages under RLUIPA against defendants Newland, Cambra, Weaver, Fletcher and

1   Paul proceed, as well as plaintiff's claims for prospective injunctive relief against defendant

2   Tilton, to the extent plaintiff has framed colorable claims implicating a state prison policy

3   allowing female guards to observe him, a male Muslim inmate, while he is nude in the shower or

4   undressed in his cell.   See Order, filed on 3/30/07, adopting Findings and Recommendations,

5   filed on 3/06/07.  With those modifications, the court sets forth the remaining allegations of the

6   fourth amended complaint (AC), filed on 9/08/05.

7    Fourth Amended Complaint

8                Named as defendants are former California State Prison- Solano (CSP-Sol)

9   Warden Anthony Newland; former California Department of Corrections and Rehabilitation

10  (CDCR) Director Steve Cambra, and three California State Prison -Solano (CSP-Sol)

11  correctional officers (C/O): C/O J.R. Weaver; C/O Fletcher; C/O Paul.  Defendant Tilton has

12  been substituted in in his official capacity for purposes of any potential prospective injunctive

13  relief.  Plaintiff at the time of the filing of his fourth amended complaint was housed at California

14  State Prison-Lancaster (CSP-Lac) in Los Angeles; his later filings demonstrate that he was

15  subsequently incarcerated at California Men's Colony and California Correctional Facility (CCI)

16  in Tehachapi, and is currently located at High Desert State Prison (HDSP).

17                Plaintiff alleges that defendant Weaver, from September 18, 1998 through March,

18  2000, repeatedly placed plaintiff in a life-threatening situation at CSP-Sol by telling staff and

19  inmates that plaintiff is a homosexual, child molester and rapist.  AC, p. 3.  Plaintiff further

20  alleges that defendant Weaver provided information to CSP-Sol Muslim inmates about plaintiff's

21  alleged misconduct which gave rise to CDC-115 Rule Violation Reports, making it difficult for

22  plaintiff to worship and have a fellowship with Muslim inmates, as well as making it difficult for

23  plaintiff to interact with general population inmates and potential cell partners.  Id.  Moreover,

24  plaintiff alleges that defendant Weaver shared with other staff the information about his

25  commitment offense, evidently a conviction for second degree murder.  Id.  Plaintiff claims that

26  defendant Weaver placed false documents in his file, although he does not identify such alleged

3

documents.  Plaintiff revisits a claim that has been previously found, inter alia, <u>Heck</u>-barred.[2]

AC, p. 4.  Plaintiff alleges that defendant Weaver has falsely labeled him as a sexual predator in

retaliation for plaintiff having filed inmate grievances, as well as a grand jury complaint, against

her for the purpose of having staff and inmates threaten his life or injure him. AC, pp. 4, 7.

Plaintiff alleges that male inmates are exposed to observation by female guards in

the use of cell toilet facilities and in various states of dress and undress in their cells.  AC, p. 5.

Plaintiff further alleges that he is denied the right to the free exercise of his religion by defendant

Warden Newland in allowing plaintiff to be, or at risk for being, viewed completely or partly

nude by any female guard in the course of her duties because such exposure is forbidden by the

Holy Qu'ran which requires male Muslims not to reveal their private parts to any but a wife or

certain close relative(s).  AC, pp. 5-6.  Plaintiff does not reference the Religious Land Use and

Institutionalized Persons Act of 2000 (RLUIPA) as the basis for his claim within the body of his

complaint although he has been given ample opportunity to do so.  Plaintiff has, however,

referenced RLUIPA in the caption of his filing, so the court has liberally construed his claims

with regard to female guards as made under RLUIPA.[3]  Defendants Weaver, Fletcher and Paul, in

retaliation for plaintiff's having filed grievances about female guards being able to watch him in

the shower, have made sure to observe plaintiff at length in the shower and in his cell, violating

his right to practice his faith as a Sunni Muslim.  AC, p. 8.

Plaintiff claims that defendants Newland and Cambra "created a policy or custom

allowing and encouraging the illegal act of placing plaintiff in administrative segregation

housing... violating plaintiff's Islamic beliefs."  AC, p. 6.  Plaintiff seeks money damages and

---

[2]  <u>Heck v. Humprhey</u>, 512 U.S. 477, 114 S. Ct. 2364 (1994).

[3]  As previously noted in <u>Findings and Recommendations</u>, filed on 3/06/07, n. 3, adopted by <u>Order</u>, filed on 3/30/07.  Plaintiff's claims with regard to violations of his First Amendment right to the free exercise of religion by defendants Newland and Cambra were dismissed long ago, so that plaintiff might more properly attempt to frame a RLUIPA claim.  <u>See Order</u> and <u>Findings and Recommendations</u>, filed on May 13, 2003, p. 17.  The <u>Findings and Recommendations</u>, were adopted by <u>Order</u>, filed on July 24, 2003.

1  injunctive relief.

2  Motion for Continuance

3        Plaintiff, on 11/13/07, filed a motion for a continuance of defendants' summary

4  judgment motion, averring that defendants Newland, Paul and Fletcher failed to answer

5  interrogatories or respond to a discovery motion he submitted on 8/2/07.  He moves for an order

6  compelling discovery, including interrogatories which plaintiff contends were served on

7  defendants, which he states were not "fully" answered.  He includes requests for production that

8  are dated 11/08/07, with no indication that those requests were served previously.   He seeks

9  $1000.00 for bringing the putative motion.

10        Defendants, in opposing the motion, are correct that discovery in this matter

11  closed on 8/3/07, and that plaintiff failed to seek an extension of the discovery deadline.  See

12  Scheduling Order, filed on 4/25/07.  In addition, defendants contend they were never served with

13  the discovery requests at issue and did not see them before plaintiff filed the present motion.

14        In reply, plaintiff includes a copy of a 9/13/07 memorandum indicating a

15  computer crash of outgoing legal meal, such that the High Desert State Prison mailroom

16  supervisor is unable to retrieve the log of outgoing legal mail from February, 2007, until Sept. 13,

17  2007.  More puzzlingly, plaintiff references a first and second set of interrogatories and a set of

18  requests for production of documents that he indicates were served on defendants on 9/07/04,

19  and for which "defendants never gave me this problem."

20        The instant case was filed in 2000.  Plaintiff brings his motion for a continuance

21  and motion to compel far beyond the 8/03/07 discovery deadline and simply offers no substantive

22  reason for failing to serve his discovery requests earlier.  Even if he served them when he says he

23  did, on 8/02/07, that would have been too late.  In the 4/25/07 scheduling order, the following is

24  set forth:

25        The parties may conduct discovery until August 3, 2007.  Any
      motions necessary to compel discovery shall be filed by that date.

26        All requests for discovery pursuant to Fed. R. Civ. P. 31, 33, 34, or

1    36 shall be served not later than sixty days prior to that date.

2  Moreover, Fed. R. Civ. P. 56(f) specifies that a request for a continuance should be made in the

3  form of an affidavit setting forth "specified reasons" that a party "cannot present facts essential to

4  justify its opposition," which plaintiff has failed to submit.  Plaintiff's motion for a continuance,

5  pursuant to Fed. R. Civ. P. 56(f), is denied, as is his belated request for an order compelling

6  discovery.

7  Motion for Summary Judgment

8    Defendants move for summary judgment on the grounds that: 1) plaintiff cannot

9  recover damages under the Religious Land Use and Institutionalized Persons Act of 2000

10  (RLUIPA) and  his claims for injunctive relief are moot; 2) the retaliation claim fails; 3)

11  defendants are entitled to qualified immunity.  Motion for Summary Judgment (MSJ), pp. 1–12.

12    *Legal Standard for Summary Judgment*

13    Summary judgment is appropriate when it is demonstrated that the standard set

14  forth in Fed. R. Civ. P. 56(c) is met.  "The judgment sought shall be rendered forthwith if . . .

15  there is no genuine issue as to any material fact, and . . .  the moving party is entitled to judgment

16  as a matter of law."  Fed. R. Civ. P. 56(c).

17    Under summary judgment practice, the moving party

18    always bears the initial responsibility of informing the district court
   of the basis for its motion, and identifying those portions of "the
19    pleadings, depositions, answers to interrogatories, and admissions
   on file, together with the affidavits, if any," which it believes
20    demonstrate the absence of a genuine issue of material fact.

21  Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct., 2548, 2553 (1986).  "[W]here the

22  nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

23  judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers

24  to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered,

25  after adequate time for discovery and upon motion, against a party who fails to make a showing

26  sufficient to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial.  See id. at 322, 106 S. Ct. at 2552.  "[A] complete

failure of proof concerning an essential element of the nonmoving party's case necessarily

renders all other facts immaterial."  Id.  In such a circumstance, summary judgment should be

granted, "so long as whatever is before the district court demonstrates that the standard for entry

of summary judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323, 106 S. Ct. at 2553.

        If the moving party meets its initial responsibility, the burden then shifts to the

opposing party to establish that a genuine issue as to any material fact actually does exist.

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1356

(1986). If the moving party meets its initial responsibility, the burden then shifts to the opposing

party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita

Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986).  In

attempting to establish the existence of this factual dispute, the opposing party may not rely upon

the allegations or denials of its pleadings but is required to tender evidence of specific facts in the

form of affidavits, and/or admissible discovery material, in support of its contention that the

dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11, 106 S. Ct. at 1356 n.

11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that

might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec.

Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the

evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool

v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

        In the endeavor to establish the existence of a factual dispute, the opposing party

need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

1    genuine need for trial.'" Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (quoting Fed. R. Civ. P.

2    56(e) advisory committee's note on 1963 amendments).

3            In resolving the summary judgment motion, the court examines the pleadings,

4    depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

5    any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

6    477 U.S. at 255, 106 S. Ct. at 2513.  All reasonable inferences that may be drawn from the facts

7    placed before the court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S.

8    at 587, 106 S. Ct. at 1356.  Nevertheless, inferences are not drawn out of the air, and it is the

9    opposing party's obligation to produce a factual predicate from which the inference may be

10   drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985),

11   aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing

12   party "must do more than simply show that there is some metaphysical doubt as to the material

13   facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the

14   nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587, 106 S.Ct.

15   1356 (citation omitted).

16           On 8/02/02, the court advised plaintiff of the requirements for opposing a motion

17   pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154 F.3d

18   952, 957 (9th Cir. 1998) (en banc),  cert. denied, 527 U.S. 1035 (1999), and Klingele v.

19   Eikenberry, 849 F.2d 409 (9th Cir. 1988).

20                           *Undisputed Facts*

21           Plaintiff, a state prisoner, CDC H-59819, was confined at CSP-Solano at the

22   relevant times that give rise to the allegations herein.  Plaintiff's commitment offense was second

23   degree murder.  Warden T. Carey has been substituted in this action in his official capacity with

24   regard to plaintiff's claims for prospective injunctive relief, as has the Secretary of the CDCR,

25   James Tilton, in his official capacity, for the former Director of the CDC, defendant Cambra.

26   Defendant Newland was the warden, and defendants Weaver, Fletcher, and Paul were

                                                    8

correctional officers at CSP-Sol at times material to the matters at issue.   Plaintiff is an adherent

of the Muslim faith.  One tenet of plaintiff's religion is modesty, and he cannot show his

nakedness to anyone other than his wife or certain other close relatives.  Since 1994, plaintiff has

been issued several disciplinary violations for sexually improper behavior directed toward female

staff members.  Supporting evidence for this indisputable fact is provided in defendants' Exs.

A-3 through Ex. A-11, authenticated copies of disciplinary actions wherein plaintiff was found

guilty in August, 1994, of masturbation, in an incident reported by C/O Sterling (not a

defendant); in April of 1995 of indecent exposure/masturbation, in an incident reported by C/O

McCullom (not a defendant); in December of 1997 of overfamiliarity, in an incident reported by

C/O Stufflebeam (not a defendant), later reduced to an administrative CDC-128 G chrono; in

December, 1998, of sexual behavior, evidently having been found to be masturbating, in an

incident reported by defendant Weaver on September 18, 1998, which appears to have been

subsequently modified to indecent exposure; in June of 1999 for indecent exposure/masturbation

in an April, 1999, incident reported by defendant Fletcher — which plaintiff avers was later

dismissed (see below); in January 2000, for sexual misconduct/masturbation, in a December,

1999 incident reported by defendant Paul, which was evidently subsequently modified to "Div. F,

3004(b) disrespectful behavior," with reduced credit forfeiture; in August of 2003, of indecent

exposure with priors, in an incident reported by C/O Smith (not a defendant), the latest incident

post-dating the filing of this action.  In addition, the same exhibits include custodial chronos: one

in February of 1995, written by C/O L. Noyce, recounting an episode wherein this officer while

conducting an institutional count, observed plaintiff "lying on his back, on the bottom bunk,

stroking himself while staring at me," on 2/20/95, and noting that the day before, on 2/19/95,

plaintiff had been previously cautioned about such behavior; and one dated 1/21/00 concerning a

12/17/99 incident submitted by defendant Weaver, about which more is included below.

Notwithstanding any contentions by plaintiff (see below), his disciplinary record, as noted,

renders undisputed the fact that since 1994, he has been issued several disciplinary violations for

1  sexually inappropriate behavior directed toward female correctional officers.

2  　　　　The following are based on defendant Weaver's declaration (MSJ, Ex. B), on the

3  9/18/98, disciplinary report by Weaver (MSJ, Ex. A-7) and on the 12/17/99 chrono by Weaver

4  (MSJ, Ex. A-9), and are deemed undisputed facts to the extent that plaintiff expressly agrees or

5  does not specifically dispute or directly address them: on or about September 7, 1998, defendant

6  Weaver was assigned as a relief officer in Building 3, the unit that housed plaintiff.  Defendant

7  Weaver worked Third Watch, between the hours of 2 p.m. and 10:00 p.m., and every night the

8  10:00 p.m. count was conducted before Third Watch officers left for the evening.   On September

9  17, 1998, during the 10:00 p.m. count, defendant Weaver approached plaintiff's cell, and saw

10  him urinating.  The toilet is in the front of the cell, by the cell door, so that anyone looking into

11  the window for count would see the inmate's exposed private parts.  Inmates are asked to refrain

12  from urinating during count to avoid misunderstandings between inmates and staff.  Defendant

13  Weaver counseled plaintiff that his behavior was inappropriate, and told him if he could not

14  "hold it" during count, that he should sit down on the toilet to urinate.  As defendant Weaver

15  approached plaintiff's cell, at around 9:55 p.m., plaintiff stepped back from the door and stood in

16  front of the toilet.  Plaintiff was masturbating and began to ejaculate on the toilet seat and floor.

17  Repulsed by plaintiff's behavior, defendant Weaver shouted at plaintiff to put on some clothes,

18  and to stop his behavior.   Because it was late, the tier was quiet, and it is possible that inmates

19  and staff heard defendant Weaver's comments.  Defendant Weaver issued plaintiff a disciplinary

20  violation for Sexual Behavior.  Plaintiff had his disciplinary hearing on December 9, 1998.

21  Plaintiff admitted his guilt, but claimed he thought count was over and he wasn't masturbating

22  for the benefit of Defendant Weaver.  Plaintiff was found guilty and assessed a 90 day credit loss,

23  40 extra hours of duty, was counseled and warned.  Defendant Weaver began working Second

24  Watch in Building 1 in February or March  of 1999.  She worked on the second tier and every

25  hour the officers conducted a 10 minute unlock.  The second tier officer is assigned to go to the

26  front entrance of the building and stand outside the building, check identification, and observe

10

the yard in case of an incident.   During those unlocks, plaintiff would stand outside of Building
1 and stare at defendant Weaver.  Plaintiff approached defendant Weaver on the yard.
Defendant Weaver told plaintiff he was not to speak to her unless it was an emergency.  On
December 17, 1999, defendant Weaver was conducting the standing count and approached
plaintiff's cell.  Plaintiff was seated on the toilet holding open a photo album.  The album was
positioned so that defendant Weaver could see the photos. The photographs were pornographic in
nature, showing women in various sexual poses.  Defendant Weaver told plaintiff to look at those
photos at a more opportune time, but plaintiff stated that he would look at what he wanted.
Defendant Weaver wrote a counseling chrono documenting the incident.  The chrono also details
defendant Weaver's concerns about plaintiff, concerns that she expressed to her supervising
Sergeant and to Officer Weatherwax.

The following facts are also undisputed in the evidence provided: on April 13,
1999, defendant Control Booth Officer Fletcher accused plaintiff of masturbating in the shower
and contended that plaintiff was watching her as she was walking around the control booth.
When plaintiff was finished with his shower he was brought to defendant Fletcher who told him
that his actions were inappropriate and offensive.  Plaintiff stated that he didn't know what she
was talking about.  Defendant Fletcher wrote plaintiff up for indecent exposure/masturbation.
Plaintiff's first disciplinary hearing regarding this RVR was held on June 14, 1999.  Plaintiff
claimed to have been shaving his pubic area, and that he was not going to turn his back away
from the officer.  Plaintiff was found guilty and assessed 90 loss of credit, 30 days loss
of phone and night yard privileges (but see below).

On December 25, 1999, as defendant Paul was securing doors after yard release,
she saw plaintiff standing in his cell masturbating.  Defendant Paul informed plaintiff that she
was writing him up for sexual conduct/masturbation. Plaintiff appeared for his disciplinary
hearing on January 25, 2000.  He pleaded not guilty, stating "[m]y door did not have a red light
on, my door was closed, it was my little cell private time.  I was getting ready to go out to the

yard at 9:40, nature was calling I was on the shitter."  Plaintiff was found guilty of disrespectful behavior and assessed 30 days credit forfeiture and 10 days disciplinary detention.  Plaintiff contends that he was placed in Ad Seg for 59 days on Dec. 25, 1999; however, plaintiff does not adequately relate that placement to defendant Paul and plaintiff's exhibits indicate that he apparently resisted other staff by, inter alia, running around the yard, requiring use of force. Opp., p. 25, Exs. E and E-1.

It is also undisputed that plaintiff claims that defendants Weaver and Paul would stand at a distance and glance into plaintiff's cell every once in a while.  Plaintiff's depo. at 59:3-60:2.  During these times, the cell door was closed and plaintiff could only be seen from the "belly up."  Id., 59:17-60:3.  According to plaintiff, he was only observed nude on a few occasions. Id, 61:20-62:3.  Defendant Paul saw him nude two or three times; defendant Weaver, maybe four times.  Id., 61:20-62:3.  Plaintiff claims that defendant Fletcher, the control booth officer, watched him as he showered, but concedes that defendant Fletcher watched all of the inmates, and did not single him out.  Id., 60: 25-61:9-11.

It is undisputed in the record that plaintiff was transferred from CSP-Solano to Lancaster on 5/22/00.  Also undisputed is that plaintiff received a CDC-115 on 7/25/03 for "sexual behavior [-] indecent exposure with priors" at California Correctional Institution at Tehachapi, according to the record; plaintiff was found guilty and the incident was referred for possible prosecution.  MSJ, Ex. A-11.

It is also undisputed that inmates at CSP-Solano are provided with towels which can be brought back to their cells, which could be used inmates to cover themselves.  Showers at the California Correctional Facility (CCI) in Tehachapi are like closets, with doors, so that specific body parts are not observable.  Plaintiff's depo. at 72:11-18.  The showers at High Desert State Prison (HDSP) have short shower curtains. Id., at 76:11-13.  30.  At CSP-Lac, and sometimes at HDSP, Muslim inmates were allowed to take a sheet with them when they showered, and hang the sheet so that only their heads were visible.  Id., at 78:7-15.  California

1  Men's Colony (CMC) has the showers sectioned off so that inmates were generally viewed only

2  from the head up.  Id., at 78:24-79:2.

3          It is not disputed that it is the policy of the California Department of Corrections

4  and Rehabilitation to "implement Equal Employment Opportunity and affirmative action

5  principles in its personnel policies;" no employee is to be discriminated against on the basis of,

6  e.g., gender.  MSJ, Ex. E, DOM excerpt.  Each institution provides employment opportunities to

7  both men and women; female correctional officers are assigned to work on the housing units.

8  Allowing female officers to work on the housing units enables the Department to meet its

9  affirmative action goals. According to the DOM, "[a]ffirmative action is more than passive

10  non-discrimination, it is an active means toward the end result - Equal Employment

11  Opportunity." MSJ, Ex. E, DOM, § 31010.3.

12          *Disputed Facts*

13          Plaintiff does not so much dispute the fact that he was found guilty of sexual

14  behavior in violation of CAL. CODE REGS. tit.xv, § 3007, in the hearing arising from defendant

15  Weaver's 9/18/98 rules violation report nor does he deny that he was masturbating, but asserts

16  that his unauthenticated Ex. A, which appears to be a copy of a modification order, proves that

17  the charge was amended to "indecent exposure."  Opposition (Opp.), p. 23.   Plaintiff also does

18  not expressly dispute defendant Weaver's characterization of what occurred on 9/18/98, but adds

19  that she returned to his cell "about three times," and made "derogatory statements," explicitly, as

20  plaintiff sets forth: "Morris, you punk-mother-fucker what the fuck you trying to do impress your

21  cellie?  What the fucks going on is you and your bunky but buddies?  Are you fucken your bunky

22  or what you fucken Homo.  I don't want to see your fucken wrinkled up licorice, mother fucker."

23  Opp., p. 23; see also, plaintiff's deposition at p. 34.  He then goes on to contend that another

24  officer, not a defendant herein, shouted vulgarities at him.  Id.  He references yet another

25  individual, not a defendant herein, who allegedly made "retaliatory threats" to him.  Id.  As to the

26  12/17/99, counseling chrono defendant Weaver placed in plaintiff's file which he asserts

"falsely" characterizes him as a "sexual predator" (see below), while plaintiff alleges that defendant Weaver did this as a form of retaliation for plaintiff's having filed grievances and a grand jury complaint against her prior to 12/17/99, he does not expressly identify any information contained therein as inaccurate. Opp., p. 19.  His exhibits in support of a basis for the claim of retaliation on this point include the copy of the apparent (but unauthenticated) modification order, instructing that the 9/18/99 RVR written by defendant Weaver in which plaintiff was found to be guilty of sexual behavior be amended to a finding of guilt for indecent exposure. Defendants own Ex. A-8, p. 5. Since both findings cite CAL. CODE REGS. tit.xv, § 3007, this appears to be a distinction without a difference.  In addition to this modification, plaintiff includes what appears to be a copy of a director's level appeal response, dated 4/30/99, wherein plaintiff had appealed the finding of the 9/18/99 RVR, evidently claiming that he had been using the toilet and the placement of the toilet precluded privacy and that defendant Weaver and other staff had made derogatory comments at the time of the incident (none of which claims were found credible by the reviewer).  Plaintiff also includes a copy of a Solano County Grand Jury - Citizen Complaint Form (again not authenticated) and attachments, wherein plaintiff sets forth, inter alia, his grievances against defendant Weaver, with regard to the vulgar comments she allegedly made to plaintiff on 9/18/98, for which plaintiff includes what appears to be a corroborating affidavit by another inmate.  Plaintiff accuses defendant Weaver of dishonesty, as well.  He also complains therein of allegedly intrusive conduct by defendant Fletcher therein with regard to male inmates' showering with two apparent corroborating declarations from other inmates and also accuses other staff who are not defendants of misconduct.  Perhaps tellingly, plaintiff includes among what appear to be attachments to this complaint a copy of a document which references a newly-implemented pilot program for the treatment of inmates who suffer from Exhibitionism, characterizing it as a disorder.  It appears that plaintiff was informed by a letter dated 8/20/99, that his complaint did not fall within the Grand Jury's purview. See Opp., Exs. A, B & B1.  As to plaintiff's allegations that defendant Weaver told inmates and others

14

about plaintiff's commitment offense in retaliation, plaintiff offers very little substantive

evidence in his opposition to dispute defendant Weaver's declaration that she did not learn of his

commitment offense until 12/25/99, and at no time discussed that or anything else (presumably

about plaintiff) with any inmate.  MSJ, Ex. B, Weaver declaration, ¶ 18.  Plaintiff does state in

his deposition that defendant Weaver spread "ongoing" rumors that he was a child

molester/rapist and without actually specifying what was said indicates that he overheard at some

time conversations between defendant Weaver and one or two other (non-defendant) officers

regarding such rumors; he is disturbingly vague as to when or to which inmates she may have

spread such rumors, indicating that he was never so anxious as to fear for his safety as a result of

them.  Plaintiff's deposition, pp. 42-51.  He also does not specifically identify the grievance(s)

for which defendant Weaver allegedly retaliated against him in this manner.

As to the April 13, 1999 RVR by defendant Fletcher, again although plaintiff does

not dispute that at the June, 1999, hearing he was found guilty of indecent

exposure/masturbation, he asserts, however, in this instance that the charges were ultimately

dismissed, following a third level appeal and a re-hearing, which although the documents are

unauthenticated, appear to be supported by plaintiff's Ex D, and are supported by his sworn

deposition, dated 7/27/07, pp. 37-38.  The finding at the apparent re-hearing in May of 2000, was

that the evidence did not substantiate the charges and that the motion that defendant Fletcher may

have witnessed and interpreted as stroking of the penis may have been the stroking of a razor,

plaintiff having testified that shaving of all body hair is required by plaintiff's religion.  Opp.,

Exh. D, p.2.  The court finds it troubling that defendants do not include this among their

undisputed facts, particularly since counsel for defendants elicited this information in plaintiff's

deposition.  See plaintiff's depo. at pp. 37-38.  On the other hand, in a crime incident report

concerning an incident occurring on 7/25/03, in which plaintiff was charged with indecent

exposure with priors, that record notes, inter alia, that plaintiff was found guilty of indecent

exposure/masturbation on the 4/13/99 CDC-115, and does not note that the guilty finding was

15

later dismissed, so some confusion exists in the record.  Nevertheless, assuming that it was

dismissed, because defendant Fletcher may have misinterpreted the movement and brought the

charge based on what she witnessed does not, of itself and without more, signify nefarious intent

on her part, or raise a genuine issue as to this point.

As to 12/25/99 RVR issued by defendant Paul for sexual

misconduct/masturbation, the court has already noted that the guilty finding at the January, 2000,

hearing was modified to disrespectful behavior.  Plaintiff was nevertheless found guilty and, inter

alia, assessed a credit forfeiture and plaintiff does not demonstrate that the finding has been

invalidated, which the undersigned has noted earlier in this case renders plaintiff's allegations as

to this defendant for money damages Heck-barred.[4]  To the extent that the modification of the

charge permits plaintiff's proceeding against defendant Paul on a claim of retaliation, the

undersigned observes that by making the claim that he was on the toilet, plaintiff does not

expressly deny that he was masturbating within the view of defendant Paul.[5]  MSJ, Ex. A-10 &

Fletcher Dec.; Opp., p. 25.

*Discussion*

RLUIPA

Defendants contend that the Religious Land Use and Institutionalized Persons Act

of 2000 (RLUIPA), which became effective on Sept. 22, 2000, may not be applied retroactively

to events occurring between September of 1998 and March 2000, and that furthermore, RLUIPA

does not contemplate the recovery of damages from individuals but rather provides for

---

[4] Heck v. Humphrey, 512 U.S. 477, 114 S. Ct. 2364 (1994).

[5] The court takes judicial notice of the Order & Findings and Recommendations, filed on 5/13/03, p. 4, wherein plaintiff's first amended complaint was dismissed with leave to amend on defendants' motion to dismiss, the undersigned, inter alia, noting: "As to the December 25, 1999 incident, plaintiff appears to concede implicitly that he was, indeed, masturbating, for which he was issued a C.D.C. 115, when he states that, while his actions were 'reprehensible,' he was not targeting female staff when seen by defendant Paul."  Adopted by Order, filed on 7/24/03. Judicial notice may be taken of court records.  Valerio v. Boise Cascade Corp., 80 F.R.D. 626, 635 n.1 (N.D. Cal. 1978), aff'd, 645 F.2d 699 (9th Cir.), cert. denied, 454 U.S. 1126 (1981).

1   "appropriate relief against a government."  MSJ, p. 6, citing 42 U.S.C. § 2000cc-2a.[6]

2          The RLUIPA statute is silent regarding its retroactive effect.  Mayweathers v.

3   Terhune, 328 F.Supp.2d 1086, 1098 (E.D. Cal. 2004), citing Orafan v. Goord, 2003 WL

4   21972735 (N.D.N.Y. Aug 11, 2003) ("Unlike its predecessor, RLUIPA is silent as to its

5   retroactive applicability.").   After assessing the application of the then-new statute for its

6   retroactive impact in, inter alia, imposing liability for past conduct, the Mayweather Court

7   determined that "[p]re-RLUIPA monetary damages, for instance, would clearly be precluded,"

8   but found that "since the function of injunctive relief is directed to the future and not toward

9   remediation of past wrongs," "prospective injunctive relief is ordinarily not considered

10   retroactive, and courts have so held in the context of RLUIPA."  Mayweathers, at 1098, citing

11   Kikumura v. Hurley, 242 F.3d 950, 960 n. 5 (10th Cir.2001)(holding that the application of

12   RLUIPA was not retroactive where the plaintiffs sought injunctive relief); Dilaura v. Ann Arbor

13   Charter Twp., 30 Fed.Appx. 501, 509 (6th Cir.2002) ("Plaintiffs are seeking prospective relief

14   [under RLUIPA] in the form of an injunction ordering the township to allow them to run their

15   retreat house. Injunctive relief is prospective, not retroactive.").   However, to the extent that

16   injunctive relief was sought for past violations, in the form of expungement of disciplinary

17   actions related to a policy that would not have been available for relief pre-RLUIPA, such

18   injunctive relief was not ordered.  Mayweathers, at 1099.

19          On the other hand, defendants' argument that RLUIPA does not afford money

20   damages against individuals is not adequately supported in the case law.  See, e.g. Smith v.

21   Allen, 502 F.3d 1255, 1270 (11th Cir. 2007) ("the use of the phrase 'appropriate relief' in section

22   3 of RLUIPA...is broad enough to encompass the right to monetary damages ....").   The Eleventh

23   Circuit in Smith relies on Franklin v. Gwinnett County Public Schools, 503 U.S. 60, 68-69, 112

24

25          [6] "A person may assert a violation of this chapter as a claim or defense in a judicial
    proceeding and obtain appropriate relief against a government..." 42 U.S.C. § 2000cc-2a, in
26   relevant part.

S. Ct. 1028, 1034 (1992) for the principle that where Congress has given no guidance with respect to available remedies, "federal courts should presume the availability of *all* appropriate remedies." Smith, at 1270. [Emphasis added.]

Nevertheless, defendants are correct that plaintiff may not seek money damages for RLUIPA violations against defendants herein because the application of RLUIPA cannot be made retroactively. Therefore, defendants' motion for summary judgment as to plaintiff's claim for money damages against defendants under RLUIPA against defendants Newland, Cambra, Weaver, Fletcher and Paul should be granted.

Defendants concede the possibility of injunctive relief under RLUIPA but aver that these claims are moot as plaintiff has been transferred, shows no reasonable probability of being returned to CSP-Sol, and the subsequent institutions at which plaintiff has been housed do not expose plaintiff's nudity while showering by his own admission. MSJ, pp. 6-7. Plaintiff seeks in his opposition, as well, to raise new allegations, regarding, e.g., having had his rights violated by being denied access to an Eid ul fitr feast in January of 2000, a claim never before raised, which will not be addressed here. Opp., p. 25. Likewise, he makes generalized and irrelevant claims, for purposes of this action, putatively under RLUIPA, without naming specific defendants regarding allegedly not having been permitted to attend religious services, school, training programs, work programs and having limited law library access. Opp., p. 26. Plaintiff argues that his placement in Ad Seg, wherein he was exposed for strip searches in front of female guards in 1999 and 2000 implicated both his rights under RLUIPA and the hardships imposed violated due process. Opp., pp. 26-27. However, his due process claims have been previously dismissed. To the extent that he makes claims for money damages under RLUIPA for an "illegal policy" of placement by defendants Newland and Cambra, as noted above, such claims would call for retroactive application of RLUIPA. Plaintiff then segues into the second Turner factor, contending that alternative means exist for plaintiff to retain his privacy in the shower and toilet areas, in the form of translucent shower screens or "mottled smoky glass." Opp., p. 30. Plaintiff

18

goes on to argue conclusorily that the third <u>Turner</u> factor favors plaintiff without stating how.  As to the fourth <u>Turner</u> factor, which he couches as whether maintaining female officers in housing areas (of male inmates) is an exaggerated response to the prison's security concerns, plaintiff argues that, citing <u>Harper v. Wallingford</u>, 877 F.2d 728, 733 (9th Cir. 1989) that he has proffered examples of "obvious, easy alternatives," which demonstrate the response is exaggerated.  Opp., p. 31.

As to a First Amendment free exercise claim, while defendants note that such a claim has been dismissed, plaintiff argues that he retains such a claim and also argues for a claim under RFRA.  Opp., pp. 7-15.  However, the Supreme Court has held the Religious Freedom Restoration Act of 1993 (RFRA) unconstitutional.  <u>Freeman v. Arpaio</u>, 125 F.3d 732, 735-736 (9th Cir. 1997), abrogation recognized on another ground in <u>Shakur v. Schriro</u>, 514 F.3d 878, 885 (9th Cir. 1008).  He also argues that he is denied the right to the free exercise of his religion by his exposure to female guards when he dresses and undresses and uses the toilet, takes showers, relying on RLUIPA.  Opp., pp. 22, 26.  Even assuming plaintiff could proceed on a First Amendment free exercise claim, defendants are entitled to summary judgment.

While inmates retain their First Amendment right to the free exercise of religion, if a regulation impinges on an inmate's constitutional rights so long as it is reasonably related to a legitimate penological interest, the regulation passes constitutional muster.  <u>Henderson v. Terhune</u>, 379 F.3d 709, 712 (9th Cir. 2004), citing <u>O'Lone v. Estate of Shabazz</u>, 482 U.S. 342, 348, 107 S. Ct. 2400 (1987) and <u>Turner v. Safley</u>, 482 U.S. 78, 89, 107 S. Ct. 2254 (1987).   The <u>Turner</u> test includes four factors to determine if a prison regulation violates a prisoner's constitutional rights.  "First, there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it, and the governmental objective itself must be a legitimate and neutral one.  A second consideration is whether alternative means of exercising the right on which the regulation impinges remains open to prison inmates.  A third consideration is the impact accommodation of the asserted right will

have on guards, other inmates, and the allocation of prison resources.  Finally, the absence of

ready alternatives is evidence of the reasonableness of a prison regulation."  Allen v. Toombs,

827 F.2d 563, 567 (9th Cir. 1987) (citing Turner, 482 U.S. at 89-91); see also, Malik v. Brown

III, 71 F.3d at 728-729.  As this court has previously noted in dismissing plaintiff's privacy and

Eight Amendment claims, in Somers v. Thurman, 109 F.3d 614, 619-620 (9th Cir. 1997), the

Ninth Circuit made the following observation:

> [B]oth times this circuit has addressed the question, it has
> *permitted* prison officials to view unclothed inmates of the
> opposite sex.  We have engaged in a balancing of inmates' interest
> in not being viewed unclothed with the administrative needs of the
> prison.  Thus, we have permitted female guards to view unclothed
> male prisoners, where "the positions to which they are assigned
> require infrequent and casual observation, or observation at a
> distance."  Grummett v. Rushen, 779 F.2d 491, 494 (9th Cir.
> 1985).  We have also held that the Constitution does not bar female
> guards from occasionally being present at strip searches of men or
> from routinely serving on shower duty in a men's prison.
> Michenfelder v. Sumner, 860 F.2d 328, 330, 334 (9th Cir. 1988).
> In sum, this circuit has never held that the Constitution is violated
> by the mere fact of a prison official viewing the unclothed body of
> an inmate of the opposite sex....

[Emphasis in original].

The undersigned also previously noted that in Michenfelder v. Sumner, 860 F.2d

328, 334 n. 3 (9th Cir. 1988), the issue was framed as whether or not female officers observed

unclothed male inmates "regularly or frequently ... without a legitimate reason for doing so."

Finding that, inter alia, the female officers' role in shower duty in that case did not establish an

inordinate or inappropriate amount of contact with unclothed prisoners, the appellate court noted

the "special relevance" of the third Turner factor, determining that requiring female officers "to

be replaced by males for the duration of strip searches would [] displace officers throughout the

prison."  Michenfelder, supra, at 334.  The prison's allocation of duties among the male and

female employees was found to represent "a reasonable attempt to accommodate prisoners'

privacy concerns consistent with internal security needs and equal employment concerns."  Id.

\\\\\

1          Here, plaintiff simply has not raised a genuine issue of material fact with regard to

2     his exposure to the defendants.  The court has accepted as an undisputed fact that plaintiff is an

3     adherent of the Muslim religion, and it is undisputed that modesty is a tenet of that religion.  The

4     court also notes, however, that plaintiff avers that he has been a practicing Muslim since 1991.

5     See plaintiff's deposition, 13:12-14.  Notwithstanding, it cannot escape notice that plaintiff, a

6     person with an amazing lack of self-perspective, has nevertheless engaged in exhibitionist

7     conduct for which he has been disciplined in actions brought not only by defendants but also by

8     others since 1994 and continuing until at least up to 2003.  Such behavior does at least raise a

9     serious question as to whether the First Amendment would even apply in the context of this case.

10    See DeHart v. Horn, 227 F.3d 47, 51 (9th Cir. 2000) ("mere assertion of a religious belief does

11    not automatically trigger First Amendment protections....only those beliefs which are both

12    sincerely held and religious in nature are entitled to constitutional protection").  Plaintiff's history

13    of administrative discipline for inappropriate sexual behavior in the presence of female

14    correctional officers, and even conduct occurring long after this case was filed and not involving

15    defendants, simply does not comport with a claim that this particular plaintiff's right to practice

16    his religion was infringed by his naked body having been exposed to defendants Weaver,

17    Fletcher and Paul.  Summary judgment for defendants Weaver, Fletcher, Paul and Newland on

18    plaintiff's claims of infringement on the practice of his religion by exposure of his nudity to

19    females, whether under RLUIPPA or the First Amendment, should be entered for defendants.

20          Retaliation

21          Inmates have a right to be free from the filing of false disciplinary charges in

22    retaliation for the exercise of constitutionally protected rights.  Pratt v. Rowland, 65 F.3d 802,

23    807 (9th Cir. 1995); Schroeder v. McDonald, 55 F.3d 454, 461 (9th Cir. 1995); Rizzo v. Dawson,

24    778 F.2d 527, 532 (9th Cir. 1985).  The Ninth Circuit treats the right to file a prison grievance as

25    a constitutionally protected First Amendment right.  Hines v. Gomez, 108 F.3d 265 (9th Cir.

26    1997); see also Hines v. Gomez, 853 F. Supp. 329 (N.D. Cal. 1994) (finding that the right to

1    utilize a prison grievance procedure is a constitutionally protected right, cited with approval in

2    Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995)); Graham v. Henderson, 89 F.3d 75 (2nd Cir.

3    1996) (retaliation for pursing a grievance violates the right to petition government for redress of

4    grievances as guaranteed by the First and Fourteenth Amendments); Jones v. Coughlin, 45 F.3d

5    677, 679-80 (2nd Cir. 1995) (right not to be subjected to false misconduct charges as retaliation

6    for filing prison grievance); Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989) (filing

7    disciplinary actionable if done in retaliation for filing inmate grievances); Franco v. Kelly, 854

8    F.2d 584, 589 (2nd Cir. 1988) ("Intentional obstruction of a prisoner's right to seek redress of

9    grievances is precisely the sort of oppression that section 1983 is intended to remedy" (alterations

10   and citation omitted)); Cale v. Johnson, 861 F.2d 943 (6th Cir. 1988) (false disciplinary filed in

11   retaliation for complaint about food actionable).

12          In order to state a retaliation claim, a plaintiff must plead facts which suggest that

13   retaliation for the exercise of protected conduct was the "substantial" or "motivating" factor

14   behind the defendant's conduct.  See Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th

15   Cir. 1989).  The plaintiff must also plead facts which suggest an absence of legitimate

16   correctional goals for the conduct he contends was retaliatory.  Pratt at 806 (citing Rizzo at 532).

17   Verbal harassment alone is insufficient to state a claim.  See Oltarzewski v. Ruggiero, 830 F.2d

18   136, 139 (9th Cir. 1987).  However, even threats of bodily injury are insufficient to state a claim,

19   because a mere naked threat is not the equivalent of doing the act itself.  See Gaut v. Sunn, 810

20   F.2d 923, 925 (9th Cir. 1987).  Mere conclusions of hypothetical retaliation will not suffice, a

21   prisoner must "allege specific facts showing retaliation because of the exercise of the prisoner's

22   constitutional rights."  Frazier v. Dubois, 922 F.2d 560, 562 (n. 1) (10th Cir. 1990).

23          As plaintiff has been previously informed, while he has not framed colorable

24   allegations with respect to any false disciplinary charges brought by any defendant because such

25   claims have been previously found to be Heck-barred, and to the extent that plaintiff sought

26   injunctive relief regarding such charges, he has been informed that he must proceed by way of a

1  habeas petition, he has nevertheless been allowed to proceed against defendants Weaver, Fletcher

2  and Paul on his claim of retaliation by these defendants for their having allegedly deliberately

3  and for extended periods observed plaintiff while he was showering or while he was undressed in

4  his cell because he filed inmate grievances related to female guards' observation of nude or

5  undressed male inmates.  Other than the rejected putative grand jury citizen's complaint, plaintiff

6  does not provide the grievances he filed against these defendants that might have motivated such

7  retaliation.  The court's review indicates the grievances provided concerned other staff.  Nor, as

8  defendants observe, has plaintiff offered evidence that suggests that defendants' observation of

9  him was motivated by any grievances he filed against them.  The undisputed facts do not

10  demonstrate that they deliberately observed him in the nude for long periods.  Defendants on this

11  claim of retaliation are entitled to summary judgment.

12          Plaintiff was allowed to proceed against defendant Weaver on a separate claim of

13  retaliation for his having filed grievances against her by spreading false allegations among staff

14  and other inmates that plaintiff was a child molester, homosexual and/or rapist for the purpose of

15  setting plaintiff up for injury or worse, as well as revealing sensitive information about plaintiff's

16  commitment offense.  In his opposition, plaintiff appears to tangle his claims.  On the one hand,

17  he argues that indecent exposure or exhibitionism has not historically been deemed a significant

18  offense, a recounting which appears to be at least an implicit admission that disciplinary actions

19  involving such allegations against him have not been baseless; on the other hand, he contends

20  that on 12/17/99, defendant Weaver placed a document in his prison file, falsely labeling him a

21  sexual predator, in retaliation for his having filed a 602 grievance and grand jury complaint,

22  citing Exs. A, B, B-1.  Opp., pp. 17-19.  A review of defendants' attachment 9 to Ex. A and

23  plaintiff's exhibit B-4 is copy of a custodial counseling chrono apparently signed by defendant

24  Weaver and dated 1/21/00 which states:

25          On December 17, 1999, at approximately 1720 hours, I was
           conducting the 1730 hours institutional standing count in Unit 3.  I
26          approached cell 209, which is occupied by Inmate Morris, H-

59819, 3-209-L and Inmate Clinton, EE-30034, 3-209-U.  When I looked in the cell, Inmate Morris was sitting on the toilet holding a photo album open.  Inmate Morris had the book open and facing the window.  Inmate Morris had the book positioned in such an awkward manner that he would have only been able to look at the photos with his peripheral vision.  It was obvious that Inmate Morris was purposely showing me the book.  The photo's [sic] were pornographic in nature.  They were mostly of various women in sexual poses including masturbating, bending over their genitals open and many other lurid poses.  I immediately announced that it was count time and ordered Inmate Morris to stand.  I then attempted to counsel Inmate Morris about the photo's [sic].  I stated, "You need to look at those at a more opportune time.  It's count time and I don't want to look at that."  Inmate Morris had a negative attitude stating, "I'll look at what I want, ain't nobody trying to hear you, you European bitch."  I reminded Inmate Morris that he has already been disciplined for masturbating at me and that I did not appreciate his sexual advances.  Inmate Morris continued to be belligerent making several racist statements.  It should be noted that in approximately September of 1998, Inmate Morris masturbated and ejaculated at me during the 2200 hours count.  He was later found guilty by Lieutenant for this offense.  On several occasions since then Inmate Morris has continued to make sexual advances towards me.  I counseled Inmate Morris in approximately March of this year for continually loitering in front of Unit # 1 and he had no purpose to be there every unlock other than to harass me.  On another date, approximately one week after Inmate Morris was given a CDC-115 for masturbating at Officer Fletcher, Inmate Morris approached me on the yard as I was returning from covering the morning meal.  He was attempting to talk to me about the September 1998 masturbation incident.  He stated, "I don't understand what was wrong."  I informed Inmate Morris that he was found guilty for masturbating and ejaculating at me.  I also ordered Inmate Morris to never speak to me unless it was an emergency.  Since that day, Inmate Morris has not attempted to talk to me other than the [1]2-17-99 count time incident.  Inmate Morris has however made me feel extremely uneasy because he continually leers at me.  I feel Inmate Morris is a dangerous individual with a serious problem with women.  I don't feel that Inmate Morris possesses any self control when it comes to his sexual desires.  I know of at least three other female officers who have had problems with Inmate Morris of the same nature, Officer Fletcher, Officer Helmer, and Officer Paul.  In this writer's opinion Inmate Morris is a danger to women in general.  I am concerned that Inmate Morris is delusional about the women officers he has disrespected in this manner.  I fear that he may actually physically assault one if he is given the opportunity.

Plaintiff's allegation that this report is false or fabricated in retaliation is simply not supported by the undisputed facts or by any other part of the record.  As to his claim that she

24

1   spread false rumors as a form of retaliation that plaintiff is a child molester, homosexual or

2   rapist, while plaintiff provides, in the form of his deposition testimony, some evidence that she

3   and other staff members on occasion made such inappropriate references in his presence, his

4   claims with regard to other inmates being so informed are of such vagueness as to fail to raise a

5   genuine issue.  Nor is his claim of defendant Weaver's having participated in conversations about

6   plaintiff with other staff adequately linked to any grievance by plaintiff so as to indicate any such

7   discussion was in retaliation for plaintiff's having filed any.  Likewise, as to plaintiff's

8   commitment offense, plaintiff has not clarified how and to whom defendant Weaver spread such

9   information.   Plaintiff's claims of defendant Weaver's having used vulgar language on the night

10  for which she wrote him up for a disciplinary violation on 9/18/98 does not support a claim of

11  retaliation.  Defendants are entitled to summary judgment on this claim.

12                     Injunctive Relief

13          The court notes that while plaintiff seeks at a minimum modification of the

14  showers throughout the prison system by, e.g., strategic placement of shower curtains, the

15  undisputed facts show that facilities other than CSP-Solano at which plaintiff has been

16  subsequently housed already have at least some accommodations to limit observation of inmates

17  while they shower.  Plaintiff's main grievance with regard to shower accommodations thus

18  centers on CSP-Solano.   As to that facility, plaintiff himself asserts that he believes himself to be

19  "barred from returning to Solano," which would appear to render any claim based on conditions

20  there to be moot.[7]  Plaintiff's depo, 86:20-21.  Ironically, despite all that he claims to have

21  suffered at CSP-Solano, he wishes to be returned there, evidently to be closer to his family, even

22  though he finds High Desert State Prison to be "a really nice place."  Id., 87:17-18.  Because

23  plaintiff has not raised a genuine issue of material fact as to his claims of RLUIPA violations or

24

25          [7]  Injunctive relief claims made by an inmate concerning an institution at which he is no
    longer incarcerated have been rendered moot.  See  Sample v. Borg, 870 F.2d 563 (9th Cir.
    1989); Darring v. Kincheloe, 783 F.2d 874, 876 (9th Cir. 1986).  See also Reimers v. Oregon,
26  863 F.2d 630, 632 (9th Cir. 1988).

                            25

violations under the First Amendment's free exercise clause or for retaliation, any claims for

prospective injunctive relief against defendant Secretary Tilton will be denied.

Qualified Immunity

Defendants claim entitlement to qualified immunity for plaintiff's claims of

retaliation and under RLUIPA.  Qualified immunity protects government officials acting in their

official capacities from civil liability unless their conduct violates "clearly established" statutory

or constitutional rights of which a "reasonable" official would have known.  Harlow v.

Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982).

In Saucier v. Katz, 533 U.S. 194, 202, 121 S.Ct. 2151 (2001), the Supreme Court

imposed a specific analysis for determining whether qualified immunity is warranted.  The court

first considers whether the facts alleged, taken in the light most favorable to plaintiff, show that

the officer's conduct violated a constitutional right.  533 U.S. at 201.  If the court finds no

violation occurred, "[t]he inquiry ends," and "the plaintiff cannot prevail."  Motley v. Parks, 432

F.3d 1072, 1077 (9th Cir. 2005)(en banc).  If the facts alleged demonstrate a constitutional

violation, the court will then consider whether the right in question was "clearly established"

such that a reasonable officer would know that "his conduct was unlawful in the situation he

confronted."  Saucier, 533 U.S. at 202, 121 S.Ct. 2151.

Because the facts taken in the light most favorable to plaintiff demonstrate none

of the defendants violated plaintiff's constitutional rights, the qualified immunity analysis ends.

Accordingly, IT IS ORDERED that:

1. Plaintiff's motion/request for a continuance, pursuant to Fed. R. Civ. P. 56(f),

filed on 11/13/07 (# 108) is denied, as is his belated request for an order compelling discovery.

2. Plaintiff's cross-motion for summary judgment, filed on 10/29/07 (#106) is

vacated as defective.

IT IS HEREBY RECOMMENDED that defendants' motion for summary

judgment, filed on 9/21/07 (#99) be granted, and judgment entered for defendants.

1        These findings and recommendations are submitted to the United States District

2  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

3  days after being served with these findings and recommendations, any party may file written

4  objections with the court and serve a copy on all parties.  Such a document should be captioned

5  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

6  shall be served and filed within ten days after service of the objections.  The parties are advised

7  that failure to file objections within the specified time may waive the right to appeal the District

8  Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

9  DATED: 08/21/08

10                             /s/ Gregory G. Hollows

11                           GREGORY G. HOLLOWS
                            UNITED STATES MAGISTRATE JUDGE

GGH:009

12  morr2794.msj

27